USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/18/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELA BENCEBI NAZARIO,

                Plaintiff,

v.

NANCY A. BERRYHILL,[1] Acting Commissioner or Social Security,

                Defendant.

No. 16-CV-01091 (NSR) (PED)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Angela Bencebi Nazario brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's decision to deny Plaintiff's application for Social Security disability benefits.[2] (*See* Compl., ECF No. 1.)

This matter was initially referred to Magistrate Judge Paul E. Davison to issue a Report and Recommendation ("Report") on the parties' cross-motions for judgment on the pleadings on May 4, 2016. (*See* Order of Reference, ECF No. 7.) Now before the Court is Magistrate Judge Davison's Report recommending that Defendant's motion be granted and Plaintiff's motion be denied. (*See* ECF No. 17.) Plaintiff filed a timely objection to the Report, asking this Court to reject Magistrate Judge Davison's findings that (1) the Administrative Law Judge ("ALJ")

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is substituted for former Acting Commissioner, Carolyn W. Colvin, as the Defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The agency decision under review is the September 10, 2014 decision of the Administrative Law Judge ("ALJ"), which became the final decision of the Social Security Commissioner by means of a December 15, 2015 ruling of the Social Security Administration Appeals Council. *See Gates v. Astrue*, 338 F. App'x 46, 48 n. 2 (2d Cir. 2009). Thus, for the purposes of this decision, the Court will use the terms "Commissioner" and "ALJ" interchangeably. *See id.*

1

properly weighed the medical opinion evidence, and (2) the ALJ appropriately evaluated Plaintiff's credibility. Defendant did not respond to Plaintiff's objection.

After careful review of the record, the Court agrees with Plaintiff and finds that the ALJ improperly weighed the medical opinion evidence. The Court additionally finds that this error tainted the ALJ's evaluation of Plaintiff's credibility. Plaintiff's motion for judgment on the pleadings is, thus, GRANTED and Defendant's motion is DENIED.

## BACKGROUND

The Court adopts the detailed recitation of facts included in Magistrate Judge Davison's Report and assumes the parties' familiarity with it. The Court will, however, discuss specific facts as they become relevant in its analysis of Plaintiff's claims.

## LEGAL STANDARDS

### I. Review of Report and Recommendation

A magistrate judge may "hear a pretrial matter dispositive of claim or defense" if so designated by a district court. *See* Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1)(B). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *accord* 28 U.S.C. § 636(b)(1). The Court may "accept, reject, or modify, in whole or in part" the findings set forth in the magistrate judge's recommended disposition. *Rivera v. Berryhill*, No. 16-CV-8580 (GBD) (SDA), 2018 WL 1167056, at *1 (S.D.N.Y. Feb. 16, 2018).

Where neither party has objected to the magistrate judge's recommendation, "a district court need only satisfy itself that there is no clear error in the face of the record." *Ruiz v. Citibank, N.A.*, No. 10-CV-5950 (KPF), 2014 WL 4635575, at *2 (S.D.N.Y. Aug. 19, 2014)

(internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." (internal quotation marks omitted)). Where, however, a party objects to the magistrate's recommendation, the Court "must make a *de novo* determination as to those portions of the report to which objections are made." *Rivera*, 2018 WL 1167056, at *1 (citing 28 U.S.C. § 636(b)(1)(C)). In its *de novo* review, the Court must consider the "Report, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Diaz v. Girdish*, No. 04-CV-5061 (RJH), 2007 WL 187677, at *1 (S.D.N.Y. Jan. 23, 2007).

## II. Review of a Social Security Claim

Judicial review of Social Security claims is limited. *Brush v. Berryhill*, 294 F. Supp. 3d 241, 253 (S.D.N.Y. 2018). It is not the province of the reviewing court "to determine for itself whether the plaintiff was disabled, and therefore entitled to Social Security benefits." *Burke v. Comm'r of Soc. Sec.*, No. 16-CV-6520 (KMK) (PED), 2017 WL 6029166, at *2 (S.D.N.Y. Dec. 5, 2017) (citing *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998)). Rather, "the reviewing court considers merely 'whether the correct legal standards were applied and whether substantial evidence supports the decision.'" *Id.* (quoting *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part by* 416 F.3d 101 (2d Cir. 2005)); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). Accordingly, an ALJ's determination is final *unless* it was "based on legal error" or is "not supported by substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation marks omitted).

In determining whether substantial evidence supports the ALJ's decision, the Court must "examine the entire record, including contradictory evidence and evidence from which

conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks omitted). Nevertheless, "substantial evidence" remains a "very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted). "If evidence is susceptible to more than one rational interpretation, the [ALJ's] conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (citation omitted). "It is not for this Court to substitute its own judgment for that of the [ALJ], even if it might justifiably have reached a different result upon *de novo* review." *Ortiz v. Berryhill*, No. 17-CV-4751 (RWS), 2018 WL 3360755, at *7 (S.D.N.Y. July 10, 2018) (internal quotation marks omitted) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

"However, where the proper legal standards have not been applied and might have affected the disposition of the case, [the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Velez v. Colvin*, No. 14-CV-3084 (CS) (JCM), 2017 WL 1831103, at *15 (S.D.N.Y. May 5, 2017) (internal quotation marks omitted) (citing *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004)). Rather, if the Court determines that the ALJ has applied an improper legal standard, a remand for further proceedings is warranted. *Id.*

### III. Eligibility Standard for Social Security Disability Benefits

An individual is considered 'disabled' under the Social Security Act when he or she is "unable 'to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Rivera*, 2018 WL 1167056, at *2 (quoting 42 U.S.C. § 423(d)(1)(A)). Additionally, the individual's "physical or

mental impairments [must be] of such severity that [s]he . . . cannot, considering [her] age, education, and work experience, engage in any . . . kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A).

The Social Security Administration's regulations provide "a five-step sequential framework to guide the presiding [ALJ] in evaluating claims for benefits under the Social Security Act." *Rivera*, 2018 WL 1167056, at *2 (citing 20 C.F.R. § 416.920). Pursuant to this framework:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him [or her] disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not 'listed' in the regulations, the Commissioner then asks whether, despite the claimant's severe impairments, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Burke*, 2017 WL 6029166, at *2 (quoting *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

"The claimant bears the burden of proof on the first four steps." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). "If, however, the claimant proves that the impairment prevents him or her from performing the claimant's past work, the burden shifts to the Commissioner at the fifth step." *Burke*, 2017 WL 6029166, at *2 (citing *Green-Younger*, 335 F.3d at 106)). To satisfy this burden, the Commissioner must prove "that there is other gainful work in the national economy that [the claimant] could perform." *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002). If the ALJ does, indeed, find that "significant numbers of jobs exist in the national economy that the claimant can perform," *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014), the ALJ must determine that the individual is not disabled, *see* 20 C.F.R. § 404.1520(a)(4)(v).

## DISCUSSION

In the present action, Plaintiff seeks reversal of the ALJ's finding that she is not entitled to Social Security disability benefits for the period of July 1, 2012 through December 3, 2013 on the grounds that: (1) the ALJ failed to properly weigh the medial opinion evidence, and (2) the ALJ failed to properly evaluate Plaintiff's credibility. (Pl.'s Mem. of Law Objecting to Report and Recommendation ("Pl.'s Objection") at 1 & 6, ECF No. 18.) The Court now considers each of Plaintiff's arguments in turn.

I.   **Medical Opinion Evidence**

Plaintiff first contends that the ALJ erred in: (1) giving only partial weight to the opinion of her treating physician, Dr. Joshua Lehman,[3] and (2) instead awarding significant weight to the opinions of an orthopedic surgeon, Dr. Graziosa, and a consulting examiner, Dr. Pelczar-Wissner. (*Id.* at 1 & 4.) Defendant maintains, however, that the ALJ properly evaluated—and discounted—Dr. Lehman's medical conclusions given all available medical evidence. (Defendant's Mem. of Law in Supp. of Def.'s Mot. for Judgment on the Pleadings ("Def.'s Mem.") at 18, ECF No. 16.)

After careful review of the record, the Court finds that the ALJ improperly discredited key portions of Dr. Lehman's findings regarding Plaintiff's mobility and postural limitations in favor of the opinions of physicians who had only limited clinical interactions with Plaintiff.

i.   **Applicable law**

"It is well-settled that an ALJ cannot substitute her own judgment for that of a medical professional." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010). An ALJ

---

[3] While the ALJ did not *explicitly* identify Dr. Lehman as Plaintiff's "treating physician," Defendant does not contest that Dr. Lehman functioned in such a capacity. The relevant regulation defines a "treating source" as "[an] acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the patient]." 20 C.F.R. § 404.1527(a)(2). "This requirement is generally satisfied when the patient sees the doctor 'with frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition[ ].'" *Mancebo v. Comm'r of Soc. Sec.*, No. 16-CV-6400 (JPO), 2017 WL 4339665, at *3 n.2 (S.D.N.Y. Sept. 29, 2017) (quoting 20 C.F.R. § 404.1527(a)(2)).
    Dr. Lehman noted that he saw Plaintiff on a monthly basis from August 13, 2012 until December 5, 2012, then again on July 18, 2013. (Tr. at 358.) Courts in this Circuit have found such continued contacts sufficient to constitute a "treating physician" relationship. *See Mancebo*, 2017 WL 4339665, at *3 n.2 ("[Plaintiff] testified she saw Dr. Chen about once a month, which suffices to make him a treating physician." (internal citation omitted)); *see also Snell v. Apfel*, 177 F.3d 128, 130 (2d Cir. 1999) (finding that three visits to a physician was sufficient to establish a "treating physician" relationship).

may, however, resolve *genuine* conflicts in medical evidence. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *Hayes v. Berryhill*, No. 16-CV-5259 (KBF), 2017 WL 4326118, at *7 (S.D.N.Y. Sept. 28, 2017) ("It is the ALJ's duty, as the trier of fact, to resolve conflicting medical evidence." (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

In weighing medical evidence, the ALJ's decision must be guided by the so-called "treating physician rule." *Gunter*, 361 F. App'x at 199. "The treating physician rule provides that an ALJ should defer [ ] 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichoki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013) (summ. order) (quoting *Green-Younger*, 335 F.3d at 106); *see also* 20 C.F.R. § 404.1527(c)(2).

Nevertheless, "the deference accorded to a treating physician's opinion may be reduced upon consideration of [certain] factors," including:

> the length and nature of the treating doctor's relationship with the patient, the extent to which the medical evidence supports the doctor's opinion, whether the doctor is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors which tend to . . . contradict the opinion.

*Micheli*, 501 F. App'x at 26, 28 (2d Cir. 2012) (summ. order) (internal quotations omitted) (citing 20 C.F.R. § 404.1527(c)(2)(i)–(ii) and (c)(3)–(6)); *see also Selian*, 708 F.3d at 418.[4] Thus,

---

[4] Whether, and to what extent, the ALJ is required to explicitly address the above factors before discounting a treating physician's medical opinion remains ambiguous. *Compare Atawater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (noting that a "slavish recitation of each and every factor" is not required "where the ALJ's reasoning and adherence to the regulation are clear"), *and Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004) (per curiam) (affirming ALJ opinion which did "not expressly acknowledge the treating physician rule," but where "the substance of the treating physician rule was not traversed"), *with Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam) (finding that an ALJ must "*explicitly* consider" the aforementioned factors before overriding the opinion of treating physicians), *and Selian*, 708 F.3d at 418 (same); *Gunter*, 361 F. App'x at 199 (same).

At a minimum, however, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (internal quotation marks omitted). Indeed, the Second Circuit has found that failure to do so "is a ground for remand." *Snell*, 177 F.3d at 133; *see also Morgan v. Colvin*, 592 F. App'x 49, 50 (2d Cir. 2015)

8

a treating physician's opinion need not be afforded controlling weight where, for instance, her opinions are internally inconsistent. *Micheli*, 501 F. App'x at 28; *see also Michels v. Astrue*, 297 F. App'x 74, 75 (2d Cir. 2008) (summ. order) (refusing to give controlling weight to treating physician's opinions where there were his reports varied from deeming the claimant "totally disabled" to indicating that she was "feeling well" and had a good prognosis).

While conflicting opinions from other medical experts may also form the basis for discrediting a treating physician's findings, "not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician," particularly where such opinions are "rendered after limited to no contact with the claimant." *Flynn v. Comm'r of Soc. Sec. Admin.*, 17-CV-1863, 2018 WL 3323180, at *3 (2d Cir. July 6, 2018). Indeed, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419 (citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)). This admonition:

> reflects the purpose of the treating physician rule: to 'give more weight to medical opinions from [the] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [any] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'

*Flynn*, 2018 WL 3323180, at *3 (quoting 20 C.F.R. § 404.1527(c)(2)).

Courts in this Circuit have, thus, found that "it is presumed that in a conflict of views between a treating doctor and a onetime consultant, the conflict should be resolved in favor of

---

(summ. order) ("We do not hesitate to remand when the [ALJ] has not provided 'good reasons' for the weight given to a treating physician[']s opinion." (internal quotation marks omitted) (quoting *Halloran*, 362 F.3d at 33)); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.").

9

the treating physician." *Cabreja v. Colvin*, No. 14-CV-4658 (VSB), 2015 WL 6503824, at *30 (S.D.N.Y. Oct. 27, 2015). "Otherwise stated, the opinions of onetime examiners do not overrule those of a treating physician barring any serious errors in the treating physician's opinion." *Id.*

### ii. Application

A review of the present record reveals that the ALJ did not appropriately apply the treating physician rule in several respects.

First, the ALJ failed to identify any "serious errors" in Dr. Lehman's findings sufficient to justify discrediting his opinion. (*See* Tr. at 31.) Instead, the ALJ refused to credit Dr. Lehman's finding that Plaintiff could only sit, stand, or walk for a total of three hours during an eight hour work day, stating simply that such a finding was "not well supported by medically acceptable diagnostic techniques" and that the "substantial evidence of the record does not support restrictions to the extent indicated by Dr. Lehman." (*Id.*)

However, the ALJ's decision fails to elaborate *how* Dr. Lehman's medical opinion—which was based on his review of magnetic resonance imaging (MRI) results, electromyography (EMG) tests, and his monthly consultations with Plaintiff—was unsupported by medically acceptable diagnostic techniques. (*See* Tr. at 358.) Nor does the ALJ's decision sufficiently elaborate in what way the substantial evidence of the record does not support Dr. Lehman's findings. (*Id.*)

While *Defendant* argues that Dr. Lehman's opinions regarding Plaintiff's inability to sit, stand, or walk for prolonged periods of time was inconsistent with his own contemporaneous clinical notes, such reasoning is markedly absent from the ALJ's opinion. (*See* Tr. at 22–34.) Indeed, the ALJ's findings include no reference to Dr. Lehman's contemporaneous clinical

notes, much less any explanation of how they are inconsistent with his ultimate conclusion concerning Plaintiff's postural limitations.

Rather than meaningfully addressing Dr. Lehman's findings on their merits, the ALJ simply and summarily rejected them in favor of the opinions of two consultative physicians— Dr. Catherine Pelczar and Dr. Albert Graziosa. (Tr. at 30–31.) The ALJ did not, however, provide any substantive reason to credit the findings of Dr. Pelczar or Dr. Graziosa over those of Dr. Lehman. Rather, the ALJ simply concluded that the findings of the consulting physicians were "well-supported by medically acceptable diagnostic techniques" and "consistent with other substantial evidence in the record." (Tr. at 29–30.)

The ALJ's decision to summarily discredit Dr. Lehman's findings in favor of those of Dr. Pelczar and Dr. Graziosa is particularly troubling given the relatively limited scope of their interactions with Plaintiff. *See Selian*, 708 F.3d at 419 (finding that the ALJ erred in refusing to address the treating physician's diagnosis on the merits and instead crediting the views of a physician who "performed only one consultative examination"). Indeed, Dr. Pelczar completed only a single consultative examination of Plaintiff, (*see* Tr. at 324–28), and made no direct reference to Plaintiff's postural limitations over prolonged periods of time in her medical evaluation. (*Id.*) Dr. Graziosa's contact with Plaintiff appears similarly narrow; though he checked boxes indicating that Plaintiff has no limitations standing, walking, or sitting, (*Id.* at 296), the record suggests that his orthopedic consult with Plaintiff was limited to her left shoulder pain. (*Id.* 303.) The ALJ offered no reason why the findings of a consulting doctor, who had limited interactions with Plaintiff, and provided no indication that he conducted an examination beyond the apparently narrow scope of his consultation, should outweigh the findings of Plaintiff's treating physician.

11

Given his failure to directly grapple with the merits of Dr. Lehman's opinion or offer any analysis explaining why the consulting physician's findings should control, the ALJ's decision must be vacated and this matter must be remanded for further proceedings. *See Jurman v. Berryhill*, No. 16-CV-6874 (NSR) (PED), 2018 WL 3300712, at *12 (S.D.N.Y. Mar. 14, 2018), *report and recommendation adopted by* 2018 WL 2383149 (S.D.N.Y. May 24, 2018) (remanding for further proceedings where the ALJ failed to properly apply the treating physician rule).

## II. The ALJ's Credibility Determination

Plaintiff additionally contends that the ALJ erred in discrediting her subjective account of the persistence, intensity, and limiting effects of her symptoms. (Pl.'s Objection at 6.) Defendant maintains, however, that the ALJ's decision to discredit Plaintiff's own statements regarding the extent of her impairments was properly supported by substantial evidence. (Def.'s Mem. at 23.)

After a careful review of the record, the Court finds that the ALJ's credibility determination was tainted by his failure to faithfully apply the treating physician rule.

### i. Applicable Law

In determining whether a claimant who has a severe impairment nonetheless has the residual functional capacity to perform available work, "an ALJ is required to take the claimant's reports of pain and other limitations into account." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citing 20 C.F.R. § 416.929). The ALJ is not required, however, "to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id.* (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).

As with any finding of fact, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints" so long as the finding is supported by substantial evidence. *Osorio v. Barnhart*, No. 04-CV-7515(DLC), 2006 WL 1464193, at *6 (S.D.N.Y. May. 30, 2006) (internal quotation marks omitted). The ALJ is required, however, to set forth any credibility determination "with sufficient specificity to permit intelligible review of the record." *Peña v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *10 (S.D.N.Y. Dec. 3, 2008) (internal quotation marks omitted) (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988)); *see also Cautillo v. Berryhill*, No. 17-CV-1356 (KPF) (DCF), 2018 WL 1305717, at *17 (S.D.N.Y. Mar. 12, 2018) ("The ALJ must . . . include specific reasons for [his or her] finding on credibility, supported by the evidence in the case record and the reasons must make it sufficiently clear for a reviewer to determine the weight the ALJ gave to the [claimant's] statements and the reasons for that weight.")

To properly evaluate a claimant's subjective assertions of pain and other limitations, an ALJ must engage in a two-step process. *Gernier*, 606 F.3d at 49. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). Second, if the ALJ determines that the claimant does suffer from such an impairment, "the ALJ must [then] consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a)). At this step—in addition to the objective medical evidence—the ALJ must consider:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other

measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

*Meadors v. Astrue*, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)–(vii)).

### ii. Application

In the present action, the ALJ determined that though Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible "for the reasons explained in [his] decision." (Tr. at 28–29.) The ALJ then proceeded to outline the medical treatment and assessment information provided by the various consulting and treating physicians, and noted that Plaintiff's "medical condition remained well controlled with occasional outpatient treatment and medication." (*Id.* at 31.) The ALJ further noted that Plaintiff did not require hospitalization or any other special medical procedure, and concluded that while "the claimant's symptoms imposed limitations in several respects, as in her exertional, postural, and manipulative restrictions, the record, when considered as a whole, does not support her contention that her symptoms prevented her from performing all work-related activities since the alleged onset date of July 1, 2012 through December 3, 2013." (*Id.* at 31.)

The ALJ's credibility determination, thus, cannot be divorced from his erroneous application of the treating physician rule. The ALJ appears to have relied heavily on the weight he assigned to each physician's opinion in deciding the credibility of Plaintiff's subjective account of her physical limitations. Consequently, to the extent the ALJ erred in discounting the medical opinions of Plaintiff's treating physician—which largely corroborated Plaintiff's account of her severe manipulative and postural limitations—the ALJ also erred in discrediting

Plaintiff's subjective reports for a supposed lack of support in the medical record. *See Cautillo*, 2018 WL 1305717, at *30 (finding that "the ALJ's errors with respect to the application of the treating physician rule . . . cannot be viewed as divorced from his assessment of Plaintiff's credibility" where the ALJ improperly discounted the treating physician's corroboration of the claimant's subjective assertions). If the ALJ were to re-weigh the medical opinions of the consulting and treating physicians under the "treating physician rule," he may very well determine that Plaintiff's subjective reports are supported by the medical evidence. Accordingly, remand is also warranted for a re-determination of Plaintiff's credibility.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied. This matter is remanded for further proceedings consistent with this Court's opinion. The Clerk of the Court is respectfully directed to terminate the motions at ECF No. 13 & 15 and close this case.

Dated: July 18, 2018
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge